AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
**04/09/2026**
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ GSA _____ DEPTUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
**4/09/26**
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ev _____ DEPUTY

United States of America,

v.

Landon Smith,
James Lamont,

Defendant(s)

Case No.   2:26-mj-02086-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 7, 2026 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Fernando Alejandre, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        4/09/26

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Margo A. Rocconi, U.S. Magistrate Judge
*Printed name and title*

AUSA: Christopher Jones (x7383)

## AFFIDAVIT

I, Fernando Alejandre, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of the following:

a.    A criminal complaint against Landon SMITH ("SMITH") and James LAMONT ("LAMONT") for a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, evidence in this matter, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF AFFIANT

3.    I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), and have been so employed since February 2022. I am currently assigned to HSI in Los Angeles, California as part of the Homeland Security Task Force, Transnational Criminal Organizations, Cartels Group, which is responsible for investigating illegal narcotics

trafficking/related offenses, and Drug Trafficking Organizations ("DTO"). Through my training, I have learned of HSI's criminal investigative authority, as well as the investigative techniques. HSI is responsible for enforcing federal criminal statutes prohibiting, among other things, the distribution of and possession with intent to distribute drugs, in violation of Title 21 of the United States Code. During my employment with HSI, I have investigated the smuggling of drugs into and out of the United States. I have assisted with the execution of search warrants to seize evidence of violations of federal and state law, as well as arrest warrants to apprehend individuals who have committed such violations.

4.   Prior to my tenure at HSI, I worked as a deportation officer at Immigration and Customs Enforcement, Enforcement and Removal Operations. I have combined law enforcement experience of seven years conducting investigations using similar methods utilized in this investigation. In addition, I possess a degree in Political Science and Anthropology from San Diego State University.

### III.  **SUMMARY OF PROBABLE CAUSE**

5.   In early February 2026, HSI Special Agents ("SAs") received information from a cooperating defendant that an unidentified individual was distributing methamphetamine from a residence located at 4335 Jublio Drive, Tarzana, California 91356 (the "Jublio Premises"). HSI initiated an investigation into the individual and the SUBJECT PREMISES. During the investigation, HSI and the Bureau of Alcohol, Tobacco, firearms

and Explosives ("ATF") Undercover Agents ("UCAs") successfully completed a controlled purchase of two pounds of methamphetamine at the SUBJECT PREMISES from a previously unidentified black male ("UBM1"), now known to be Landon SMITH, on February 19, 2026.

6. In March 2026, HSI SAs conducted multiple surveillances of SMITH, his Range Rover vehicle, and the Jublio Premises. Pursuant to a federal warrant, SAs installed a GPS tracking device on SMITH's Range Rover. On or about March 16, 2026, HSI SAs witnessed SMITH travel from the Jublio Premises to a United Parcel Service store in Tarzana, CA (the "Tarzana UPS") to drop off a parcel. SAs detained the parcel. Pursuant to a federal search warrant, SAs searched the parcel and subsequently discovered approximately one kilogram of suspected narcotics within the parcel.

7. On or about March 26, 2026, SAs received information from the Tarzana UPS store that SMITH had dropped off two more parcels at the UPS Tarzana store. SAs detained the two parcels. Pursuant to a federal search warrant, SAs searched the two additional parcels and discovered a white crystalline substance. Field testing confirmed both parcels contained methamphetamine.

8. On or about April 7, 2026, HSI SAs executed a federal search warrant on the Jublio Premises.  HSI SAs subsequently seized approximately 18.7 kilograms of suspected methamphetamine, two kilograms of suspected heroin, 4.55 kg of suspected marijuana, 223.7 grams of suspected cocaine, and four firearms.

3

9.   During a Mirandized interview, SMITH admitted he would conduct deals, at the direction of LAMONT, in the front driveway of the Jublio Premises to include hand-to-hand transactions, delivery of parcels containing narcotics, and giving/receiving money to and from unknown individuals.

10.   During a Mirandized interview at the Jublio Premises, LAMONT admitted to possessing two of the firearms discovered on the property. LAMONT admitted to being a convicted felon and indicated he understood he could not possess firearms. He also stated that he sold marijuana and cocaine. He acknowledged the methamphetamine discovered at the Jublio Premises during the search warrant and stated that he would take responsibility for everything.

**IV. <u>STATEMENT OF PROBABLE CAUSE</u>**

11.   Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.   Undercover Agents Purchase Methamphetamine at the SUBJECT PREMISES**

12.   In early February 2026, under the direction of law enforcement, a Cooperating Defendant ("CD1")[1] set up a narcotics deal for the controlled purchase of two pounds of methamphetamine by contacting an unidentified individual currently known as "FERG" via WhatsApp, a telephonic messaging

---

[1] CD1 has been a cooperating defendant for approximately 1.5 years and is cooperating to receive credit against his charges. CD1's criminal case involves federal charges for distribution of methamphetamine and cocaine.

4

service. FERG instructed CD1 over WhatsApp to have a driver arrive at the Jublio Premises to purchase methamphetamine.

13. On or about February 19, 2026, HSI and ATF UCAs purchased methamphetamine at the Jublio Premises in Tarzana, California. Specifically, HSI and ATF UCAs purchased approximately two pounds of methamphetamine for $2,000 from an unidentified black male individual ("UBM1") at the Jublio Premises. Laboratory testing confirmed the two pounds were in fact methamphetamine.

14. On multiple occasions, including the day of the controlled purchase, I witnessed a Range Rover vehicle bearing California license plates 6XHW736 ("SMITH's Vehicle") driven by the same UBM1 who sold methamphetamine to the UCAs.

**B. HSI SAs Conduct Surveillances at the Jublio Premises and Install a Tracker on SMITH's Vehicle**

15. On or about March 12, 2026, SAs conducted surveillance on the Jublio Premises. I witnessed the following:

a. Within a three-hour span, at least four vehicles with six separate individuals arrived at the Jublio Premises, including a Rolls Royce SUV and a Mercedes Maybach SUV.

b. An individual entered the Jublio Premises carrying a loose orange duffle bag. Approximately one hour later, the same individual departed the Jublio Premises with the orange duffle bag that appeared to be heavier, as it was hanging closer to the ground than when he arrived.

c. A separate individual arrived and entered the Jublio Premises empty-handed. Approximately 30 minutes later, the

5

same individual departed with what appeared to be a sealed to be United States Postal Service (USPS) box.

d.    These observations and activity were consistent with narcotics trafficking from a stash house and the undercover controlled purchase on or about February 19, 2026.

16.  On or about March 6, 2026, the Honorable Pedro V. Castillo, United States Magistrate Judge, issued a warrant pursuant to 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) ordering the installation of a tracking device on SUBJECT VEHICLE 1.[2]

17.  On or about March 12, 2026, while conducting surveillance on SUBJECT VEHICLE 1, I installed a tracking device on it pursuant to the warrant.

**C.    HSI SAs Conduct Further Surveillance, Detain/Search a Parcel Package**

18.  On or about March 16, 2026, HSI SAs, including myself, were monitoring SMITH's Vehicle and conducting surveillance. At approximately 3:30 p.m., I witnessed the GPS tracker travel from the Jublio Premises to a UPS branch located at 19528 Ventura Boulevard, Tarzana, California 91356 (the Tarzana UPS). HSI SAs arrived at the Tarzana UPS store and saw SMITH's Vehicle parked in the parking lot. SA Dylan Greer witnessed UBM1 drop off a parcel ("PARCEL 1") at the UPS and depart in SMITH's Vehicle. SMITH's Vehicle returned to the Jublio Premises.

19.  I went into the UPS store and spoke with one of the employees ("Employee A"). I described UBM1 to Employee A and they recognized UBM1 and PARCEL 1. Employee A informed me that

---

[2] Case No. 2:26-MJ-01325.

UBM1 was in the store approximately 15 minutes before I entered. Employee A retrieved PARCEL 1. I reviewed store footage to confirm it was the same package that UBM1 had dropped off, including the shape/size of the box, label placement, and markings on the box. Employee A informed me that UBM1 paid with a gift card. Through my training and experience investigating drug parcel cases, I know that drug traffickers will purposely use forms of payment that cannot be traced back to their identity, such as cash and gift card. I know that drug traffickers do this to avoid detection by law enforcement.

20.  PARCEL 1 was a brown packing box bearing UPS 3 Day Select tracking number 1Z EV6 980 12 2437 3574. PARCEL 1 was addressed to "A Smith, 1100 Dunad Ave Opa Locka, FL 33054." The listed return address on PARCEL 1 was "Landon Smith, The UPS Store #0044, 19528 Ventura Blvd, Tarzana, CA 91356." PARCEL 1 listed its weight as five pounds. A photograph of the parcel and a photograph taken from the video footage provided by UPS of the UBM1 shipping the parcel are shown below:

 

21. I conducted law enforcement database checks regarding the UPS shipping label. The label listed a partial first name of the receiving party ("A Smith"), the UPS store was listed as the sender, and there were no records found for the sender's name ("Landon Smith"). This is consistent with my training and experience of drug traffickers providing label information to evade detection by law enforcement. PARCEL 1 was subsequently detained.

22. On or about March 19, 2026, the Honorable Margo A. Rocconi, United States Magistrate Judge, issued a warrant pursuant to 21 U.S.C. § 841(a)(1), 21 U.S.C. § 843(b) ordering the search and seizure of PARCEL 1.[3]

23. That same day, I opened PARCEL 1 and discovered approximately one kilogram of suspected narcotics. The substance was observed as a white powdery material in the shape of a brick with the letters "alo" stamped into it. The substance was sealed inside multiple black vacuum sealed bags. Lab results for the suspected narcotics are currently pending. A photograph of the suspected narcotics discovered inside PARCEL 1 is shown below:

---

[3] Case No. 2:26-MJ-01604.

 

## D.    UBM1 Is Identified as Landon SMITH

24.  On or about March 24, 2026, I returned to the Tarzana UPS, where I spoke with the store owner (Store Owner A) and an employee (Employee B). From my conversation with them, I learned the following:

      a.    UBM1 had provided a phone number associated with a UPS account at the UPS Store.

      b.    The following address was associated with UBM1's UPS account: Landon SMITH, 1213 Gordon Street, Apartment 4, Los Angeles, CA 90038. The following phone number was associated with UBM1's UPS account: 424-677-3187.

      c.    I ran open source and law enforcement database checks and confirmed a "Landon Smith" is associated with 1213 Gordon Street, Apartment 4, Los Angeles, CA 90038. SAs retrieved multiple photos of SMITH.

9

d.    I obtained store footage of UBM1 dropping off PARCEL 1.

e.    Employee B informed me that UBM1 returned to the UPS Store on at least three occasions to inquire about the status of the parcel. Through my training and experience, I know narcotics traffickers will check on the status of seized parcels.

f.    UBM1 told Employee B that the parcel was "sea moss," and that he would bring them some sea moss next time. PARCEL 1 did not contain sea moss. Narcotics traffickers who exploit the parcel system to traffic narcotics will misrepresent the contents of the parcel to avoid detection and seizures of the narcotics.

g.    Furthermore, between approximately January 16, 2026, and March 17, 2026, SMITH dropped off approximately 12 parcels to the UPS store. All 12 of these parcels had a listed return address of the UPS store. I know that narcotics traffickers will do this to avoid detection by law enforcement in the event that a parcel is seized.

25.  UPS Employee B, who confirmed they had assisted UBM1 on multiple occasions, was shown photographs of SMITH. Employee B stated that they recognized the individual in the photos of SMITH to be UBM1.

26.  On or about March 24, 2026, the two undercover agents, who previously purchased approximately two pounds of methamphetamine from UBM1 at the Jublio Premises on or about February 19, 2026, were shown photographs of SMITH. Both undercover agents confirmed that the individual in the

10

photograph appeared to be the individual who sold them the methamphetamine.

**E.    Seizure of Additional Parcel Shipments by SMITH**

27.  On or about March 25, 2026, HSI SAs received information from the Tarzana UPS store indicating that SMITH had shipped another parcel bearing UPS tracking number: 1Z EV6 980 12 2421 6716 ("PARCEL 2"). SAs requested the parcel be held to be detained by HSI.

28.  On or about March 26, 2026, SA Dylan Greer went to the Tarzana UPS store to detain PARCEL 2. Upon arrival, the SA observed SMITH'S Vehicle parked in front of the UPS store. The SA saw SMITH leave the store, enter SMITH'S Vehicle, and drive away.

29.  SA Greer entered the Tarzana UPS Store and met with the staff. SA Greer was informed that SMITH had dropped off an additional parcel ("PARCEL 3") before SA Greer had entered the store. SA Greer was shown video footage corresponding with PARCELS 2 and 3.

30.  Information on PARCELS 2 and 3 is below:

a.    PARCEL 2 was a brown packing box bearing a UPS 3 Day Select Tracking Label. The UPS tracking number was listed as 1Z EV6 980 12 2421 6716. Information listed on the shipping label indicated that it was shipped on or about March 25, 2026. The shipper was listed as Landon SMITH, (424) 677-3187. The return address was listed as the UPS Store #0044, 19528 Ventura Blvd, Tarzana, CA, 91356. The receiver was listed as Stephanie Rodgers, 4739 Higdon Rd, Potts Camp, MS, 38659.

11

b.    PARCEL 3 was a brown packing box bearing a UPS 3 Day Select Tracking Label. The UPS tracking number was listed as 1Z EV6 980 12 5756 7062. Information listed on the shipping label indicated that it was shipped on or about March 26, 2026. The shipper was listed as Landon SMITH, (424) 677-3187. The return address was listed as the UPS Store #0044, 19528 Ventura Blvd, Tarzana, CA, 91356. The receiver was listed as Sheryl Lapointe at 57 Houston Rd, Potts Camp, MS, 38659.

31.  On or about March 31, 2026, the Honorable Alicia G. Rosenberg, United States Magistrate Judge, issued a warrant pursuant to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 843(b) ordering the search of PARCEL 2 and PARCEL 3.[4]

32.  On or about April 1, 2026, SA Dylan Greer opened PARCEL 2 and PARCEL 3. From my conversations and review of reports, I learned the following:

a.    PARCEL 2 contained four vacuum sealed bags with a gross weight of approximately 4.69 kilograms. A narcotics field test was conducted and the substance tested positive for methamphetamine.

b.    PARCEL 3 contained three vacuum sealed bags with a gross weight of approximately 4.66 kilograms. A narcotics field test was conducted and the substance tested positive for methamphetamine.

c.    PARCEL 2 and PARCEL 3 each contained an Apple AirTag. AirTags are small, coin-shaped tracking devices designed

---

[4] Case No. 2:26-MJ-01857.

to help users track and locate items with precise location services.

       d.    Through my training and experience investigating narcotics parcel cases, I know that DTOs will often use AirTags, or other tracking devices, to locate their product. This is done for a variety of reasons, including determining if the parcel has been stopped by law enforcement.

       e.    Furthermore, PARCEL 2 and PARCEL 3 were packaged in a similar manner as PARCEL 1. PARCEL 1 and PARCEL 2 contained suspected narcotics in a small black container with a lid, and PARCEL 3 contained suspected narcotics in a small grey container with a grey lid.

**F.   HSI SAs Execute a Search Warrant at the SUBJECT PREMISES**

33. On or about April 3, 2026, the Honorable Alka Sagar, United States Magistrate Judge, issued a warrant pursuant to 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, authorizing the search of the Jublio Premises.[5]

34. On April 7, 2026, agents executed the warrant at the Jublio Premises The following items were seized from the Jublio Premises:[6]

       a.    18.8 kilograms of suspected methamphetamine

       b.    2 kilograms of suspected heroin

       c.    223.7 grams of suspected cocaine

       d.    4.55 kilograms of suspected marijuana

       e.    Four firearms

---

[5] Case No. 2:26-MJ-01942.

[6] All reported values are approximate.

35.   The methamphetamine, cocaine, and marijuana were all found in a closet located on the first floor of the Jubilo Premises. The closet was in a hallway adjacent to the kitchen. The closet appeared to be a storage room for narcotics as no household items were discovered within it.

36.   The heroin was discovered in a vehicle which was parked in the driveway of the Jubilo Premises. The vehicle was a 2019 Chevrolet Corvette ("the Corvette") bearing California License plate 9JLJ056. The Corvette was previously associated with Aaron Williams. The heroin was discovered in a storage compartment located in the rear cargo area.

37.   SAs discovered four firearms located on the Jubilo Premises. The details are below:

a.   A Sig Sauer, model Mosquito, bearing serial number F364066, located in the bathroom adjacent to SMITH's bedroom.

b.   A Glock, model 17 Gen4, 9mm caliber pistol, bearing serial number ABFL322, located in the closet of LAMONT's bedroom.

c.   A Ruger, model LCP, 9mm caliber pistol bearing serial number 455-66761, located in a 2022 Genesis ("the Genesis") GV80 bearing tag number 8ZXR923. The Genesis is registered to LAMONT.

d.   A The Sig Sauer model P229 Elite, 9mm caliber pistol bearing serial number 55E043524, located inside a washing machine in the laundry room on the second floor.

14

38.   HSI SAs encountered four individuals, who admitted to living at the Jublio Premises: LAMONT, SMITH, Aaron Williams, and Tyrus Gaither.

39.   During the initial execution of the search warrant at the Jublio Premises, SMITH was observed by law enforcement fleeing from the rear of the residence into neighboring properties. SMITH was apprehended by law enforcement without incident near the area behind the Jublio Premises.

40.   During a Mirandized interview, SMITH admitted to being directed by LAMONT to conduct hand-to-hand transactions in front of the Jublio Premises and to send parcels containing narcotics. Furthermore, SMITH admitted to witnessing other individuals package narcotics in the Jublio Premises. Smith described seeing plastic bins similar to the bins discovered inside PARCEL 1, PARCEL 2, and PARCEL 3. When presented with photographs of the contents of the seized parcels, SMITH confirmed that the bins discovered inside the seized parcels are of the same bins as the ones he had seen packaged at the Jublio Premises. SMITH admitted he would conduct deals, at the direction of LAMONT, in the front driveway of the Jublio Premises to include hand-to-hand transactions, delivery of parcels containing narcotics, and giving/receiving money to and from unknown individuals. SMITH admitted that LAMONT would direct him to send mail parcels across the United States. When asked if SMITH knew what was inside the parcels, SMITH indicated that he assumed it was mostly likely weed but knew that sometimes the parcels contained other substances.

15

41. In SMITH's bedroom, SAs discovered packaging materials similar to those found in the seized parcels. These materials included packing peanuts, vacuum seals, and a vacuum sealer.

42. In SMITH's bathroom, adjacent to his bedroom, SAs discovered a loaded pistol. The pistol was a Sig Sauer, model Mosquito, bearing serial number F364066, with a bullet in the chamber and a loaded magazine. SMITH admitted that it was a pistol used by everyone in the residence for protection of the Jublio Premises and that he had previously moved it from the kitchen and placed it into his bathroom drawer.

**G.   Interview of LAMONT at the Jublio Premises**

43. While LAMONT was detained by SAs outside of the Jublio Premises during the execution of the search warrant, he spontaneously stated that there was a firearm located in his bedroom and that it belonged to him.

44. During the search of LAMONT's bedroom inside the Jublio Premises, SAs discovered a Glock, model 17 Gen 4, bearing serial number ABFL322, with a bullet in the chamber and a loaded magazine inside the bedroom closet.

45. While being escorted to be interviewed, LAMONT observed SAs searching a 2022 Genesis (the Genesis") GV80 bearing tag number 8ZXR923, at which time he verbally indicated that there was an additional firearm inside the car, and he indicated that it belonged to him. The Genesis is registered to LAMONT and LAMONT stated that it is his vehicle.

46. During the search of the Genesis, Sas located a Ruger, model LCP, 9mm caliber pistol bearing serial number 455-

16

66761, with a bullet in the chamber and a loaded magazine was discovered inside center console of the vehicle.

47.  Later that day, SAs conducted a Mirandized interview of LAMONT. During the interview LAMONT stated that the firearm discovered inside his bedroom and the firearm discovered inside the Genesis both belonged to him. LAMONT stated that he was a convicted felon and indicated that he understood he was not allowed to possess firearms. LAMONT stated that he was going to protect himself regardless. LAMONT continued and admitted he sold marijuana and cocaine. When questioned about the substances discovered in the downstairs hallway closet near the kitchen of the Jublio Premises, LAMONT acknowledged the methamphetamine in the box at the bottom of the closet and indicated it was bad quality. LAMONT stated that the largest quantity of cocaine that he had ordered and subsequently distributed out of the Jublio Premises was approximately 25 kilograms. He stated that he is a middleman. Throughout the interview and the search warrant execution, LAMONT said he would take responsibility for everything discovered in the Jublio Premises.

**H.    SMITH's Criminal History**

48.  In April 2026, I reviewed SMITH's criminal history and learned that SMITH had previously been convicted of felony crimes. SMITH was convicted of at least the following felonies:

a.    On or about October 9, 2007, violations of Illinois Penal Code 720 ILCS 5.0/18-1-A IL: Robbery and 720 ILCS 5.0/12-4-B-8 IL: Aggravated Battery/Public Place, in the Cook County Circuit Court, Chicago, Case Number 2006CR001410.

17

## I.    LAMONT's Criminal History

49.   In April 2026, I reviewed LAMONT's criminal history and learned that LAMONT had previously been convicted of multiple felony crimes. LAMONT was convicted of at least the following felonies:

a.    On or about August 11, 1994, a violation of California Health & Safety Code Section 11350(A), Possession of a Controlled Substance, Case Number VA027767.

b.    On or about July 25, 1995, a violation of California Penal Code Section 12025(A)(1), Possession of a Concealed Weapon in a Vehicle, in the Superior Court of California, Case Number YA024716.

c.    On or about February 28, 1996, a violation of California Health & Safety Code Section 11351.5, Possession of Cocaine Base for Sales, in the Superior Court of California, Case Number TA035386.

d.    On or about February 3, 2011, a violation California Penal Code Section 12021(A)(1), Felon in Possession of a Firearm, in the Superior Court of California, Case Number COMTA11421201.

e.    On or about December 7, 2011, violations of California Health & Safety Code Section 11359 HS, Possession of Marijuana for Sales, and three counts of California Penal Code Section 12021(A)(1): Felon in Possession of a Firearm, in the Superior Court for the State of California, Case Number LAXSA07904401.

18

f.   On or about February 12, 2014, a violation of 21 U.S.C. § 846: Conspiracy to Manufacture, Distribute, and possess with Intent to Distribute Phencyclidine (PCP), in the Central District of California, case number 2:13-cr-00822-ODW.

## J.   Interstate Nexus of the Firearms Found in the SUBJECT PREMISES

50.   On or about April 7, 2026, ATF SA Donovan Manning examined evidence found at the Jublio Premises and made the following determinations:

a.   The Glock, model 17 Gen4, 9mm caliber pistol, bearing serial number ABFL322, was manufactured in Georgia. For this firearm to be found in the United States, in the state of California, it must have moved in interstate commerce.

51.   The Ruger, model LCP, 9mm caliber pistol bearing serial number 455-66761, was manufactured in Arizona. For this firearm to be found in the United States, in the state of California, it must have moved in interstate commerce.

52.   The Sig Sauer, model MOSQUITO, .22 caliber pistol, bearing serial number F364066, was manufactured in Germany. For this firearm to be found in the United States, in the state of California, it must have moved in foreign commerce.

19

## V.   CONCLUSION

53.   For all of the reasons described above, there is probable cause to believe that SMITH and LAMONT have committed a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 9th day of April
2026.

_____
HONORABLE MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE

20